T.C. Memo. 2017-59

UNITED STATES TAX COURT

VERETTA RICE YANCEY, Petitioner <u>v</u>.
COMMISSIONER OF INTERNAL REVENUE, Respondent

Docket No. 5457-15.                                              Filed April 6, 2017.

Veretta Rice Yancey, pro se.

<u>Angela B. Reynolds</u>, for respondent.

MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, <u>Judge</u>:  Petitioner filed the petition in this case in response to a
so-called Final Appeals Determination (notice of determination) denying her
request for relief from joint and several liability under section 6015 for the 2007

[*2] and 2008 taxable years.[1]  We must decide whether petitioner is entitled to relief under that section for those years.  We hold that she is not.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found.  The stipulation of facts and the attached exhibits are incorporated herein by reference.

At the time petitioner filed the petition in this case, she resided in Illinois.

On June 18, 1987, petitioner married Brian Mann (Mr. Mann).  Petitioner and Mr. Mann (Manns) were married throughout 2007 and 2008 and have one child.

During 2007 petitioner was employed as a resource manager at Hewitt Associates, LLC (Hewitt).  During 2008 petitioner was employed at Hewitt, United Airlines, and Watson, Wyatt & Co.

During 2007 and 2008 Mr. Mann was retired.  During at least 2007 and 2008 Mr. Mann gambled extensively at various casinos.  During those years and when, as discussed below, she was preparing the Manns' Federal income tax

---

[1]Unless otherwise indicated, all section references are to the Internal Revenue Code in effect at all relevant times, and all Rule references are to the Tax Court Rules of Practice and Procedure.  Some amounts are rounded to the nearest dollar.

[*3] returns for the 2007 and 2008 taxable years, petitioner was aware of Mr. Mann's gambling habits and his outstanding gambling debts.

During at least 2007 and 2008 the Manns maintained a joint account into which petitioner deposited her wage income. Throughout that time, petitioner paid from that joint account at least some of the Manns' expenses. At a time not established by the record and during at least 2007, Mr. Mann maintained in his sole name at least one bank account.

The Manns jointly filed a Form 1040, U.S. Individual Income Tax Return (return), for the 2007 taxable year (2007 joint return) and for the 2008 taxable year (2008 joint return). (We refer collectively to the 2007 joint return and the 2008 joint return as the joint returns.) As relevant here, the Manns included with the joint returns Schedules A, Itemized Deductions, and they also included with the 2008 joint return a Schedule C, Profit or Loss From Business.

Petitioner, not Mr. Mann, prepared the joint returns. Petitioner received in the mail at the Manns' home the tax-related information that she needed to prepare the joint returns. At the time petitioner signed the joint returns, she had no mental or physical health problems which prevented her from being able to understand the contents of the returns. At all relevant times petitioner was not the victim of spousal abuse or domestic violence.

[*4]   On the 2007 joint return the Manns reported total income of $155,906, consisting of "[w]ages, salaries, tips, etc." of $78,932, taxable Social Security benefits of $13,653, and Mr. Mann's gambling income (reflected as "[o]ther income") of $63,321.  On the Schedule A included with the 2007 joint return the Manns claimed on line 23, in the section for job expenses and certain miscellaneous deductions, a "GAMBLING LOSS" of $38,633 and on line 28, in the section for other miscellaneous deductions, "GAMBLING LOSSES" of $63,321, resulting in a net deduction claimed for gambling losses, after taking into account the limitation on deductible miscellaneous expenses, of $99,351.  Finally, on the 2007 joint return the Manns reported total tax of $728, total payments of $8,746, and a resulting overpayment of $8,018, which was refunded to them on May 5, 2008.

On the 2008 joint return the Manns reported total income of $170,190, consisting of "[w]ages, salaries, tips, etc." of $141,264, a business loss of $3,729, a capital loss of $6, taxable Social Security benefits of $13,968, and Mr. Mann's gambling income (reflected as "[o]ther income") of $18,693.  On the Schedule A included with the 2008 joint return the Manns claimed on line 23, in the section for job expenses and certain miscellaneous deductions, a "GAMBLING LOSS" of $18,693 and on line 28, in the section for other miscellaneous deductions,

**[*5]** "GAMBLING LOSSES" of $18,693, resulting in a net deduction claimed for gambling losses, after taking into account the limitation on deductible miscellaneous expenses, of $34,423.  On the Schedule C the Manns reported zero income and claimed "[o]ther expenses" of $3,729 for a "figure skating dress" business operated solely by petitioner.  Finally, on the 2008 joint return the Manns reported total tax of $12,994, total payments of $23,378, and a resulting overpayment of $10,384, which was refunded to them on May 4, 2009.

On August 14, 2009, petitioner commenced a proceeding in the Circuit Court for the Eighteenth Judicial Circuit in DuPage County, Illinois (DuPage County court), in which she sought a decree dissolving her marriage to Mr. Mann.  On November 9, 2009, the DuPage County court issued a decree of dissolution of marriage (divorce decree).  The divorce decree ordered and adjudged in pertinent part that "[Mr. Mann] shall be responsible for any tax liability assessed against  * * * [him] and * * * [petitioner] as a result of any joint tax returns filed for the years during the marriage."

Following an examination of the joint returns, respondent determined in pertinent part that (1) the Manns' reported wages of $78,932 on the 2007 joint return should be decreased by $11,686 to agree with the amount shown on the Form W-2, Wage and Tax Statement, from Hewitt; (2) the Manns' taxable income

[*6] should be increased by $11,685 and $7,414 for the 2007 and 2008 taxable years, respectively, on account of receipt of taxable distributions from an individual retirement arrangement (IRA) with Illinois Municipal Retirement Fund; (3) the Schedule A gambling loss deductions of $38,633 and $18,693 for the 2007 and 2008 taxable years, respectively, should be disallowed; and (4) the Schedule C "other expense" deduction of $3,729 for the 2008 taxable year should be disallowed.  Respondent also determined that section 6662(a) accuracy-related penalties should be imposed for the 2007 and 2008 taxable years.  A notice of deficiency issued to the Manns on July 22, 2010, reflected those determinations and determined deficiencies in their Federal income tax of $5,236 and $6,720 and accuracy-related penalties pursuant to section 6662(a) of $1,047 and $1,344, for the 2007 and 2008 taxable years, respectively.

Neither petitioner nor Mr. Mann filed a petition with the Court with respect to the notice of deficiency.  Accordingly, on February 7, 2011, respondent assessed the deficiencies and the section 6662(a) accuracy-related penalties determined in the notice of deficiency, together with interest thereon as provided by law.

During 2012 petitioner was employed at Hospira, Inc.  During 2013 she was unemployed.

**[*7]**  At a time not established by the record during 2013, petitioner remarried.

Petitioner filed a return for the 2012 taxable year (2012 return) and for the 2013 taxable year (2013 return).  On the 2012 return she claimed a filing status of "Head of Household" and reported total income of $103,525, consisting mostly of "Wages, Salaries, Tips, Etc." of $101,009.  She also reported a Schedule C business loss of $6,554, taxable IRA distributions of $5,960, unemployment compensation of $2,015, and other nominal items of income.  Finally, on the 2012 return petitioner reported total tax of $8,408, total payments of $21,146, and a resulting overpayment of $12,738.  On the 2013 return she claimed a filing status of "Married Filing Separate" and reported total income of $21,966, consisting of unemployment compensation of $21,861 and ordinary dividend income of $105; she reported zero "Wages, Salaries, Tips, Etc."  Finally, on the 2013 return she reported total tax of zero, total payments of $2,191, and a resulting overpayment of $2,191.

On June 6, 2013, petitioner submitted Form 8857, Request for Innocent Spouse Relief, in which she requested relief from joint and several liability under section 6015 with respect to the 2007 and 2008 taxable years.  On that form petitioner did not check the box that would have indicated that she had signed the joint returns under duress.

[*8]  On July 26, 2013, Mr. Mann submitted to respondent Form 12508,

Questionnaire for Non-Requesting Spouse.  In that form Mr. Mann stated in

pertinent part:

> As far as tax documents, W-2s, etc. I did not have to give any documents to the respondent (Veretta R. Mann).  She gathered this information via the mail delivered to our address  * * *  I do not recall ever viewing or signing any of these tax filings in question, I never asked any questions.  I let her handle the taxes.
>
> *          *          *          *          *          *          *
>
> This individual [Veretta R. Mann] was aware of a gambling problem I had and some of the debts I had incurred and was not paying.
>
> *          *          *          *          *          *          *
>
> The changed items were mine, but these changes were made due to an intentional or unintentional error made by the requesting spouse regarding disallowed deductions for gambling losses.
>
> *          *          *          *          *          *          *
>
> Yes, the requesting spouse did benefit from the money received for the tax years in question.  The requesting spouse did not inform me of how much money she received during both tax years in question.
>
> The individual filing this innocent spouse claim was totally responsible for the incorrect amounts entered regarding money won or lost as a result of my gambling.  She took it upon herself to file without me seeing or signing the tax returns.  Again, I don't recall signing either, but in the past, when I did sign, I did so without questioning the information entered.  I always assumed she was doing everything that was required to file our taxes.

**[*9]** Please note, that I did not see a dime of the overpayments she received from the tax returns. She had to know that she was not entitled to such a large return. I was very surprised when I saw how much money she got back.

On September 9, 2013, Mr. Mann filed a petition for bankruptcy under chapter 7 of title 11 of the U.S. Code (chapter 7) with the U.S. Bankruptcy Court for the Northern District of Illinois (bankruptcy court). On December 24, 2013, the bankruptcy court adjudicated Mr. Mann bankrupt under chapter 7.

Despite having a filing obligation for the 2014 taxable year, petitioner did not file a return for that taxable year, nor did she request or receive an extension of time within which to file a return for that taxable year.

At some point before September 11, 2014, respondent determined that petitioner was not entitled to the requested relief. Petitioner submitted to respondent Form 12509, Statement of Disagreement, dated September 11, 2014, appealing the determination against her. In that form she stated the following:

> I, Veretta Rice Yancey, disagree with the Internal Revenue Service determination because during the tax years of 2007 & 2008 I was married to Brian B. Mann and he is totally responsible for all tax related expenses prior to 2009.

> As you know from the record, Brian Mann received large sums of money gambling in Illinois, Indiana, Wisconsin and Michigan.

> I earned money working at United Airlines and Watson Wyatt. My earnings were reported and taxes were paid.

[*10] I was not aware of the items causing this debt. When Brian Mann provided tax data to me, I did not have reason to believe that he was dishonest in his numbers.

It was later when I became aware of his addiction gambling addiction [sic] and by that time, I had already incurred a tremendous amount of debt that I am still paying in 2014. I immediately separated myself from him and to protect myself from his liabilities, I took these necessary steps:

- A second mortgage on the house solely in my name ($50,000) to pay off his credit card payments
- Opened an individual checking * * * [account]
- Filed for divorce and divorce finalized in 2009

As you have in your records, his arrangement to pay for the tax debt was minimum based on the fact that I have a $50k second mortgage and $40k in additional credit card debt as a part of the divorce settlement.

Please note that my request for relief is an effort to maintain good mental and physical health and avoid any further stress. I suffered both a house fire and a flood while I was unemployed.

It would be unfair to hold me responsible for his negligence and deceit. I request the IRS to consider the facts in this case and remove me as a tax payer for any debt incurred by Brian Mann in 2007 and 2008. As an addict, he has been very clever in avoiding responsibility.

On December 8, 2014, respondent's Internal Revenue Service (IRS) Office of Appeals in Covington, Kentucky, issued a notice of determination to petitioner denying her relief from joint and several liability under section 6015(b), (c), and

**[*11]** (f) for the 2007 and 2008 taxable years. According to the notice of determination, she was denied relief for the following reasons:

> The information we have available does not show you meet the requirements for relief.
>
> Relief is not allowed on tax you owe on your own income or deductions.
>
> You knew, or had reason to know, of the income or deductions that caused the additional tax.
>
> You did not show it would be unfair to hold you responsible.

On February 26, 2015, petitioner timely filed a petition with this Court seeking review of respondent's determination. On March 3, 2016, 11 days before trial of this case, petitioner submitted to respondent Form 433-A, Collection Information Statement for Wage Earners and Self-Employed Individuals. In section 4 of that form she indicated that she maintained two checking accounts and a savings account that had total combined balances of $612, a mutual fund valued at $28,382, a pension plan valued at $10,346, and a section 401(k) plan valued at $17,066.

Also in section 4 of that form, petitioner indicated that she owned (1) a single-family home valued at $270,000 with respect to which there was an outstanding mortgage balance of $100,098, (2) a 2006 Mercedes Benz

[*12] valued at $5,058 with respect to which there was an outstanding loan balance of $5,593, (3) a "family room set" valued at $1,500, and (4) a "bedroom set" valued at $1,500. In section 5 of that form petitioner listed various monthly income and living expense items. With respect to the monthly income items, she indicated that she had total monthly income of $8,333, consisting of her wages of $8,341 and interest and dividends of $8.[2] With respect to the monthly living expense items, she indicated that she had total monthly living expenses of $8,514, consisting of food, clothing, housekeeping supply, personal care product, and miscellaneous expenses[3] of $3,175, housing and utility expenses of $3,494, vehicle ownership expenses of $371, vehicle operating expenses of $446, health insurance expenses of $37, life insurance premium expenses of $14, secured debt expenses of $835, delinquent State or local tax expenses of $84, and other expenses of $58.

---

[2]It appears that petitioner mistakenly subtracted the monthly amount of interest and dividends from the monthly amount of wages, rather than adding the two monthly income items, to come up with total monthly income of $8,333.

[3]So-called miscellaneous expenses are those living expenses that are not included in any other category of living expense items shown in sec. 5 of the form, such as credit card payments, bank fees and charges, reading material, and school supplies.

[*13]  As of the time of trial petitioner was employed as a consultant by U.S. Cellular Corp. and her husband was unemployed, a situation he had been in for the past five years for which she had known him.  Her annual salary at that time was approximately $110,000.

## OPINION

Generally, married taxpayers may elect to file a joint Federal income tax return.  Sec. 6013(a).  If a joint return is made, the tax is computed on the spouses' aggregate income, and each spouse is fully responsible for the accuracy of the return and is jointly and severally liable for the entire amount of tax shown on the return or found to be owing.  Sec. 6013(d)(3); Butler v. Commissioner, 114 T.C. 276, 282 (2000).  Nevertheless, under certain circumstances, a spouse who has made a joint return may seek relief from joint and several liability under procedures set forth in section 6015.  Sec. 6015(a).  Section 6015 provides a spouse with three alternatives:  (1) full or partial relief under subsection (b), (2) proportionate relief under subsection (c), and (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f).

Respondent considered petitioner's entitlement to relief from joint and several liability under each alternative, and we have jurisdiction to do the same.  See sec. 6015(e)(1).  In doing so, we apply a de novo standard of review, as well

**[\*14]** as a de novo scope of review.  <u>Porter v. Commissioner</u>, 132 T.C. 203, 210 (2009).  Generally, the burden of proof is on the taxpayer in a case involving relief from joint and several liability except as otherwise provided in section 6015.  <u>See</u> Rule 142(a); <u>Porter v. Commissioner</u>, 132 T.C. at 210; <u>Alt v. Commissioner</u>, 119 T.C. 306, 311 (2002), <u>aff'd</u>, 101 F. App'x 34 (6th Cir. 2004); <u>Jonson v. Commissioner</u>, 118 T.C. 106, 113 (2002), <u>aff'd</u>, 353 F.3d 1181 (10th Cir. 2003).

In order to be entitled to relief under section 6015(b), the spouse who requests that relief (requesting spouse) must satisfy the following conditions:  (1) a joint return has been made for a taxable year; (2) on such return there is an understatement of tax attributable to erroneous items of the nonrequesting spouse; (3) the requesting spouse did not know and had no reason to know of the understatement at the time the return was signed; (4) taking into account all facts and circumstances, it is inequitable to hold the requesting spouse liable for that year's deficiency in tax attributable to such understatement; and (5) the requesting spouse timely elects relief under section 6015(b).  Sec. 6015(b)(1). These conditions are stated in the conjunctive, and thus a failure to meet any one of them precludes the requesting spouse from being entitled to relief under section 6015(b).  <u>Alt v. Commissioner</u>, 119 T.C. at 313; <u>McClelland v. Commissioner</u>, T.C. Memo. 2005-121, slip op. at 9.

[*15]  Section 6015(c) permits a requesting spouse to seek relief from joint and several liability by electing to allocate to the nonrequesting spouse the portion of the deficiency attributable to the nonrequesting spouse if the following conditions are satisfied:  (1) a joint return has been made for a taxable year; (2) at the time of the election, the requesting spouse was separated or divorced from the nonrequesting spouse or had not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date of the request for relief; and (3) the requesting spouse timely elects relief under section 6015(c).  However, if the Commissioner demonstrates that the requesting spouse had actual knowledge, at the time of signing the return, of the nonrequesting spouse's item or items giving rise to the deficiency (or portion thereof), the requesting spouse is not entitled to relief under section 6015(c) with respect to that deficiency (or portion thereof).  Sec. 6015(c)(3)(C).

Petitioner is not claiming relief from joint and several liability with respect to the full amounts of the deficiencies for the 2007 and 2008 taxable years; she is claiming relief only for the portions of the deficiencies for those years that are attributable to the gambling losses that the Manns claimed on their Schedules A for those years.

**[*16]**  On the record before us, we find that petitioner has failed to carry her burden of establishing that she did not know or have reason to know that there were understatements of tax at the time she signed the joint returns and that respondent has carried his burden of establishing that petitioner had actual knowledge of Mr. Mann's gambling losses at the time she signed the joint returns. Petitioner, not Mr. Mann, prepared each of the joint returns.[4]  Petitioner received in the mail at the Manns' home the tax-related information with respect to the 2007 and 2008 taxable years that she needed to prepare the joint returns. Petitioner testified that during those years and when she was preparing the joint returns she was aware of Mr. Mann's gambling habits and his outstanding gambling debts.  At the time petitioner signed the joint returns, she had no mental or physical health problems which prevented her from being able to understand the contents of those returns.  Accordingly, petitioner is not entitled to relief under section 6015(b) or (c) for the 2007 or 2008 taxable year.

---

[4]On the joint returns the Manns claimed gambling losses on two different lines on their Schedules A for the 2007 and 2008 taxable years.  Petitioner testified that in claiming gambling losses on two different lines on these schedules, she may have double counted the same gambling loss.  If in fact petitioner did double count the same gambling loss, she had knowledge that she was overstating the respective amounts of gambling losses that Mr. Mann had incurred.

**[*17]** Where relief is not available under section 6015(b) or (c), section 6015(f) grants the Commissioner the discretion to relieve a requesting spouse of joint liability if, taking into account all the facts and circumstances, it would be inequitable to hold the requesting spouse liable for the unpaid tax or deficiency or any portion thereof. Additionally, section 6015(f) authorizes granting such equitable relief "[u]nder procedures prescribed by the Secretary". For requests filed on or after September 16, 2013, and for requests pending in any Federal court on or after September 16, 2013, Rev. Proc. 2013-34, 2013-43 I.R.B. 397, prescribes the guidelines that the IRS will consider in determining whether equitable relief is appropriate. Although we are not bound by them, since they are applicable in this case we will analyze petitioner's request under these guidelines to ascertain whether she satisfies the requirements for relief under section 6015(f). See Agudelo v. Commissioner, T.C. Memo. 2015-124, at *17-*18; Work v. Commissioner, T.C. Memo. 2014-190, at *21-*22.

Rev. Proc. 2013-34, supra, sets forth seven so-called threshold conditions (threshold conditions) that must be satisfied in order for the requesting spouse to be eligible for equitable relief under section 6015(f). Respondent does not dispute that petitioner satisfies all of those threshold conditions.

**[\*18]** Where, as here, the parties agree that the threshold conditions are satisfied, Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. at 400, sets forth circumstances under which the IRS will make a streamlined determination granting equitable relief to the requesting spouse under section 6015(f). The requesting spouse is eligible for a streamlined determination by the IRS granting equitable relief under Rev. Proc. 2013-34, sec. 4.02, only in cases in which that spouse establishes that that spouse (1) is no longer married to the nonrequesting spouse (marital status element), (2) would suffer economic hardship if not granted relief (economic hardship element), and (3) did not know or have reason to know about the item or items giving rise to the understatement or deficiency on the joint income tax return (knowledge element). See id. It is undisputed in this case that the marital status element has been established. However, because of our finding above that petitioner knew, or had reason to know, about the items giving rise to the deficiencies for the 2007 and 2008 taxable years, the knowledge element has not been established, making her ineligible for a streamlined determination.[5]

_____

[5]In the light of our finding with respect to the knowledge element, we need not address whether the economic hardship element has been established. See Rev. Proc. 2013-34, sec. 4.02, 2013-43 I.R.B. 397, 400. However, in considering below the factors set forth in Rev. Proc. 2013-34, sec. 4.03, we address whether petitioner would suffer economic hardship if equitable relief under sec. 6015(f) were not granted.

**[*19]**  Where, as here, the requesting spouse satisfies the threshold conditions but does not satisfy all of the requirements for a streamlined determination, Rev. Proc. 2013-34, sec. 4.03(2), 2013-43 I.R.B. at 400-403, sets forth seven nonexclusive factors to be considered in determining whether a requesting spouse is entitled to equitable relief under section 6015(f):  (1) marital status; (2) economic hardship; (3) in the case of an understatement, knowledge or reason to know of the item or items giving rise to the understatement or deficiency; (4) legal obligation; (5) significant benefit; (6) compliance with the income tax laws; and (7) mental or physical health of the requesting spouse.  All of these factors are to be weighted appropriately, and no one factor is determinative.  See Pullins v. Commissioner, 136 T.C. 432, 448 (2011); Kellam v. Commissioner, T.C. Memo. 2013-186, at *26.  Accordingly, we will consider each in turn.

With respect to the marital status factor, the parties agree that at the time Appeals made the determination set forth in the notice of determination, petitioner was no longer married to Mr. Mann.  The marital status factor weighs in favor of relief.  See Rev. Proc. 2013-34, sec. 4.03(2)(a).

With respect to the economic hardship factor, in determining whether a requesting spouse will suffer economic hardship if relief is not granted, Rev. Proc. 2013-34, sec. 4.03(2)(b), requires reliance on rules similar to those provided in

[*20] section 301.6343-1(b)(4), Proced. & Admin. Regs. That regulation generally provides that an individual suffers economic hardship if the individual is unable to pay his or her reasonable basic living expenses. Section 301.6343-1(b)(4), Proced. & Admin. Regs., provides in pertinent part:

(ii) Information from taxpayer.--In determining a reasonable amount for basic living expenses the director will consider any information provided by the taxpayer including--

(A) The taxpayer's age, employment status and history, ability to earn, number of dependents, and status as a dependent of someone else;

(B) The amount reasonably necessary for food, clothing, housing (including utilities, home-owner insurance, home-owner dues, and the like), medical expenses (including health insurance), transportation, current tax payments (including federal, state, and local), alimony, child support, or other court-ordered payments, and expenses necessary to the taxpayer's production of income (such as dues for a trade union or professional organization, or child care payments which allow the taxpayer to be gainfully employed);

(C) The cost of living in the geographic area in which the taxpayer resides;

(D) The amount of property exempt from levy which is available to pay the taxpayer's expenses;

(E) Any extraordinary circumstances such as special education expenses, a medical catastrophe, or natural disaster; and

(F) Any other factor that the taxpayer claims bears on economic hardship and brings to the attention of the director.

[*21] In addition, Rev. Proc. 2013-34, sec. 4.03(2)(b), requires that the IRS consider the requesting spouse's current income, expenses, and assets. See Rev. Proc. 2013-34, sec. 4.03(2)(b), 2013-43 I.R.B. at 401. That section also requires that the IRS (1) compare the requesting spouse's income to the Federal poverty guidelines for the requesting spouse's family size and (2) determine by how much, if any, of the requesting spouse's monthly income exceeds the spouse's reasonable basic monthly living expenses. See id.

It is respondent's position that "when examining economic hardship there are national standards that need to be met * * * [and] that the record is clear that Ms. Yancey's situation does not fall into * * * that specific criteria for constituting an economic hardship."

On the record before us, we agree with respondent's position in this regard. On that record, we have found facts that support that position, including the following. Petitioner's wages and other assets were sufficient to pay her reasonable basic living expenses; at the time of trial, her annual salary was approximately $110,000 and she maintained (1) a mutual fund valued at $28,383, (2) a pension plan valued at $10,346, and (3) a section 401(k) plan valued at $17,066. Petitioner would not suffer economic hardship if relief were not granted. The economic hardship factor is neutral. See id.

**[\*22]**  With respect to the knowledge factor, we have found previously in considering petitioner's entitlement to relief under section 6015(b) and (c), as well as considering the elements allowing the IRS to make a streamlined determination under section 6015(f), that she knew, or had reason to know, about the items giving rise to the deficiencies for the 2007 and 2008 taxable years.  The knowledge factor weighs against relief.[6]  See Rev. Proc. 2013-34, sec. 4.03(2)(c).

With respect to the legal obligation factor, Rev. Proc. 2013-34, sec. 4.03(2)(d), provides that that factor "will be neutral if the requesting spouse knew or had reason to know, when entering into the divorce decree or agreement, that the nonrequesting spouse would not pay the income tax liability." Although respondent does not dispute that under the divorce decree Mr. Mann is "responsible for any tax liability assessed against \* \* \* [him] and \* \* \* [petitioner] as a result of any joint tax returns filed for the years during the marriage", it is respondent's position that at the time petitioner entered into the divorce decree she "was aware of the non-requesting spouse's gambling and financial issues, and she had reason to know that non-requesting spouse would not pay the liabilities."  On the record before us, we agree with respondent's position in this regard.

_____

[6]Assuming arguendo that we had found that the knowledge factor favored relief, that finding would not change our ultimate finding set forth below as to whether petitioner is entitled to equitable relief under sec. 6015(f).

[*23] During at least 2007 and 2008 Mr. Mann gambled extensively at various casinos. During those years and when she was preparing the joint returns, petitioner was aware of Mr. Mann's gambling habits and his outstanding gambling debts. At the time petitioner entered into the divorce decree, she was aware of Mr. Mann's gambling addiction. Thus, we find that at the time petitioner entered into the divorce decree she knew or had reason to know that Mr. Mann would not pay the deficiencies for the 2007 and 2008 taxable years. The legal obligation factor is neutral.[7] See id.

With respect to the significant benefit factor, there is no evidence that petitioner or Mr. Mann realized any significant benefit from the understatements. The significant benefit factor favors relief or at worst is neutral. See Wang v. Commissioner, T.C. Memo. 2014-206; Rev. Proc. 2013-34, sec. 4.03(2)(e).

With respect to the compliance factor, petitioner did not file a return for the 2014 taxable year despite having an obligation to do so. In addition, she did not request or receive an extension of time within which to file a return for that

---

[7]The fact that in 2013 the bankruptcy court adjudicated Mr. Mann bankrupt under chapter 7 is disregarded in determining whether petitioner has the sole legal obligation to pay the 2007 and 2008 liabilities under the legal obligation factor. See Rev. Proc. 2013-34, sec. 4.03(2)(d), 2013-43 I.R.B. at 402.

[*24] taxable year.  The compliance factor weighs against relief.  See Rev. Proc. 2013-34, sec. 4.03(2)(f)(i).

With respect to the health factor, there is no evidence that petitioner was in poor physical or mental health at the time the joint returns were filed or at the time she requested relief under section 6015.  The health factor is neutral.  See Rev. Proc. 2013-34, sec. 4.03(2)(g).

Upon the basis of our examination of the entire record before us, we find that petitioner has failed to carry her burden of establishing that it would be inequitable to hold her liable for the deficiencies for the 2007 and 2008 taxable years and thus that she is entitled to relief under section 6015(f) with respect to those taxable years.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

Decision will be entered for respondent.