# United States Tax Court

T.C. Memo. 2023-101

MARISOL SEVERANCE,
Petitioner

v.

COMMISSIONER OF INTERNAL REVENUE,
Respondent

————————

Docket No. 3702-20.                                 Filed August 8, 2023.

————————

*Timothy J. Burke*, for petitioner.

*Erika B. Cormier* and *Molly H. Donohue*, for respondent.


## MEMORANDUM FINDINGS OF FACT AND OPINION

ASHFORD, *Judge*: This case arises from petitioner's request for relief from joint and several liability under section 6015 with respect to the 2010 and 2011 taxable years (years at issue).[1] The issue for decision is whether petitioner is entitled to relief under section 6015(b) or (f). We hold that she is not.

## FINDINGS OF FACT

Some of the facts have been stipulated and are so found. The Stipulation of Facts, the Supplemental Stipulation of Facts, and the attached Exhibits, inclusive of the administrative record, are

————

[1] Unless otherwise indicated, statutory references are to the Internal Revenue Code, Title 26 U.S.C., in effect at all relevant times, regulation references are to the Code of Federal Regulations, Title 26 (Treas. Reg.), in effect at all relevant times, and Rule references are to the Tax Court Rules of Practice and Procedure. Some monetary amounts are rounded to the nearest dollar.

[*2] incorporated herein by reference.[2] Petitioner resided in Massachusetts when her Petition was timely filed with the Court.

## I. *Petitioner and Mr. Severance*

Petitioner is married to Neil Severance, the nonrequesting spouse, and they reside in Massachusetts.[3] The Severances have been married since 2006, having met in 2004 while they were both on active duty in the military and deployed under the same company to Kuwait. The Severances have four children together, and petitioner has a fifth child (a son) from a previous relationship. The Severances have never been legally separated.

Petitioner quit high school, but in 1994 (the same year that her son was born and the same year that she would have graduated from high school) she enrolled in and completed a GED program. Thereafter, she enrolled as a full-time student at Wentworth Institute of Technology (Wentworth), studying architecture and engineering technology. Two and one-half years into getting her undergraduate degree at Wentworth, because she had no support from either her mother or her son's father, petitioner dropped out of Wentworth and worked. In 1999, since she did not have the money to pay for college herself, she joined the military, serving in the National Guard as a chemical operations specialist.

Petitioner left the military in October 2005, and until 2009 she worked for two different companies—Partners HealthCare System, first

---

[2] At trial the Court sustained petitioner's objection on authenticity grounds to the admission of an exhibit that respondent proffered (Exhibit 49–R). Exhibit 49–R is a screenshot picture of an unofficial copy of the purported first page of a quitclaim deed marked "CANCELLED." Respondent had proffered this exhibit to show petitioner's husband's interest in a home in Middleborough, Massachusetts. *See infra* p. 3. After trial, respondent filed a Status Report, attaching thereto Exhibit 49–R and requesting (as he suggested at trial) "that the Court take judicial notice of the contents of Petitioner's Quitclaim deed and Mortgage filed in the Plymouth County registry of deeds on May 17, 2019, at Book 51122, pages 204 and 206." However, given that Exhibit 49–R is an incomplete document, respondent has not supplied the Court with the necessary information for the Court to take judicial notice of its contents, *see* Fed. R. Evid. 201(c)(2), and thus the Court will not do so. In any event, this document would be excluded from consideration as a document not part of the administrative record, *see* § 6015(e)(7)(A), nor within one of the exceptions in section 6015(e)(7)(B) to the administrative record rule of section 6015(e)(7)(A), *see infra* p. 9. We also note that the parties have already stipulated that one of the individuals who is a title owner of the Middleborough home is petitioner's husband. *See infra* p. 3.

[3] Throughout this Opinion, petitioner and Mr. Severance will collectively be referred to as the Severances.

**[*3]** as a benefits administrator and then as an executive assistant, and the Community Builders, Inc., as a benefits coordinator. From 2009–17 petitioner was a stay-at-home mother. In August 2017 she returned to the workforce.

Mr. Severance left the military, having served as a combat medic, in 2008 or 2009. From 2009–13, he was employed as a government contractor in Iraq, first by Blackwater and then by Triple Canopy. In May 2013, upon suffering a hip injury that prevented him from performing his duties in Iraq, Mr. Severance permanently returned home and began receiving workmen's compensation; by the fall of 2013, courtesy of the post-9/11 GI Bill, he had enrolled as a full-time student in Massasoit Community College to pursue an undergraduate degree in biology, a degree which he was still pursuing as of the date of trial. While pursuing this degree, he attempted unsuccessfully to join the Massachusetts state police and worked to get recertified as a medic. Additionally, to help out with living expenses, in either 2017 or 2018 he got a part-time job as an HVAC technician.

Beginning in November 2010 or 2011 petitioner and the children resided in a house in Carver, Massachusetts (Carver home), that the Severances owned; and when Mr. Severance returned from Iraq in 2013, he joined them there. They all resided there until 2019. In 2019 petitioner and her son from the previous relationship (who was then an adult) purchased a house in Middleborough (Middleborough home), securing a mortgage loan of $517,144 to purchase it; however, title to the Middleborough home was in the names of petitioner, her son, and Mr. Severance. The Middleborough home became the Severances' family residence, and they used the Carver home as rental property occupied by third-party tenants.

II.  *The Severances' Tax Reporting*

For the years at issue and through approximately 2018, the Severances had a certified public accountant (CPA) prepare and file their joint federal income tax returns. The Severances also filed a joint federal income tax return for 2019, but the record is silent as to whether that CPA or another return preparer prepared that return.

The 2010 joint federal income tax return (2010 joint return) reported total income of $77,130, consisting of wages of $154,152 attributable to Mr. Severance's employment with Triple Canopy; a business loss of $12,205 attributable to a purported "military defense"

[*4] business of Mr. Severance, which was detailed on Schedule C, Profit or Loss From Business, attached to the 2010 joint return; unemployment compensation of $26,503 attributable to petitioner; and an exclusion of $91,500 of foreign earned income under section 911 attributable to Mr. Severance's employment with Triple Canopy, which was detailed on Form 2555, Foreign Earned Income. The 2010 joint return also reported four exemptions (one each for petitioner, Mr. Severance, and two children) and certain payments (federal income tax withheld and the making work pay credit) totaling $8,019, and claimed residential energy credits of $1,050 and itemized deductions totaling $22,141. Finally, the 2010 joint return reported a resulting federal income tax liability of $1,026 (exclusive of penalties and interest).

The 2011 joint federal income tax return (2011 joint return) reported total income of $99,233, consisting of wages of $136,114 attributable to Mr. Severance's employment with Triple Canopy and an exclusion of $36,881 of foreign earned income under section 911 also attributable to Mr. Severance's employment with Triple Canopy, which was detailed on Form 2555. The 2011 joint return also reported tuition and fees of $2,000, four exemptions (one each for petitioner, Mr. Severance, and two children), and certain payments (federal income tax withheld) of $7,495 and claimed itemized deductions totaling $45,937. Finally, the 2011 joint return reported a resulting overpayment of $1,582.

The Severances' joint federal income tax returns for the 2014–16 taxable years were filed late.

III. *The Severances' Federal Income Tax Liabilities for the Years at Issue*

Following an examination of the joint returns for the years at issue, by statutory notice of deficiency dated April 10, 2014, the Internal Revenue Service (IRS or respondent) determined deficiencies in the Severances' federal income tax of $20,958 and $8,618, and accuracy-related penalties pursuant to section 6662(a) of $4,192 and $1,713 for 2010 and 2011, respectively. The deficiencies and the accuracy-related penalties were attributable to erroneous items of both petitioner and Mr. Severance; to wit, the IRS increased the Severances' 2011 gross income because of their failure to include the total amount of unemployment compensation that petitioner received during that year, and it increased the Severances' gross incomes for the years at issue because of disallowing their reported section 911 foreign earned income

**[*5]** exclusions attributable to Mr. Severance's employment with Triple Canopy.

Neither petitioner nor Mr. Severance filed a petition with the Court with respect to the April 10, 2014, notice of deficiency. Accordingly, on September 29, 2014, the IRS assessed the deficiencies and the accuracy-related penalties determined in the notice of deficiency, together with interest thereon as provided by law.

On April 15, 2015, the IRS offset the Severances' 2014 overpayment of $1,000 against their 2010 tax liability, thereby reducing that liability.

On August 11 and 18, 2015, the IRS filed notices of federal tax lien with respect to the Severances' outstanding liabilities for the years at issue.

At a time not established by the record petitioner requested from the IRS a "balance due statement" for the Severances' outstanding liabilities for the years at issue. In response, while petitioner's Form 8857, Request for Innocent Spouse Relief, was pending before the IRS, the IRS informed petitioner by letter dated June 10, 2019, that the balances due for the years at issue, calculated to June 17, 2019, totaled $29,398. Petitioner then sent a letter dated June 13, 2019, presumably to the IRS,[4] stating that she would be "making a voluntary payment for taxes," was "not waiving [her] innocent spouse claim," and "expect[ed] to be refunded this amount upon [her] approval of [her] claim." On July 1, 2019, the IRS recorded a payment received that satisfied the Severances' liabilities for the years at issue. The funds for this payment were from the loan proceeds for the purchase of the Middleborough home.

IV.   *Mr. Severance's Chapter 13 Bankruptcy*

Meanwhile, after Mr. Severance returned from Iraq, the Severances began to experience financial difficulties, and at some point he spoke with a bankruptcy attorney and was advised that filing for bankruptcy was an option to retain the Carver home.

Consequently, on December 4, 2015, more than three years before petitioner's Form 8857 was submitted to the IRS, Mr. Severance filed a

---

[4] We say "presumably" because the letter is addressed "To Whom It May Concern" and there is no address indicating where the letter was sent.

[*6] voluntary petition for relief with the U.S. Bankruptcy Court for the District of Massachusetts (Bankruptcy Court) under Chapter 13 of the Bankruptcy Code, Title 11 U.S.C. (Chapter 13 petition). His Chapter 13 petition listed the IRS as one of his creditors, and a form he filed in connection with his Chapter 13 petition listed petitioner as a "codebtor" with respect to the IRS debt. Additionally, other forms he filed in connection with his Chapter 13 petition listed (1) his total assets valued at $422,497 and his total liabilities valued at $473,066 and (2) the assets that not only he solely owned but the assets he jointly owned with petitioner as well. The assets listed as being jointly owned with petitioner were the Carver home (valued at $378,360) and a checking account at Mutual Bank (valued at $2,435).

On December 21, 2015, in response to Mr. Severances' Chapter 13 petition, the IRS filed a proof of claim in the Bankruptcy Court reflecting that it had an income tax claim of $58,366, $44,433 of which was a secured claim for the assessed income tax for the years at issue and $13,933 of which was an unsecured priority claim under 11 U.S.C. § 507(a) for unassessed income tax for 2014.

On March 3, 2017, after Mr. Severance's Chapter 13 plan was confirmed, the Bankruptcy Court dismissed the Chapter 13 petition.[5]

V.   *Petitioner's Form 8857*

On March 18, 2019, the IRS received petitioner's Form 8857, wherein she requested relief from joint and several liability under section 6015 with respect to the years at issue. On this form petitioner did not check the boxes that would have indicated that (1) she or other members of her family were a victim of spousal abuse or domestic violence (or suffering the effects of such abuse) during the years at issue or when the joint returns for the years at issue were filed or (2) she had

---

[5] Approximately seven months later, on October 24, 2017, Mr. Severance filed a voluntary petition for relief with the Bankruptcy Court under Chapter 7 of the Bankruptcy Code (Chapter 7 petition). Like his Chapter 13 petition, his Chapter 7 petition listed the IRS as one of his creditors, and a form he filed in connection with his Chapter 7 petition listed petitioner as a "codebtor" with respect to the IRS debt. Additionally, other forms he filed in connection with his Chapter 7 petition listed (1) his total assets valued at $407,145 and his total liabilities valued at $438,948 and (2) the assets that not only he solely owned but the assets he jointly owned with petitioner as well. The assets listed as being jointly owned with petitioner were the Carver home (still valued at $378,360) and the Mutual Bank checking account (now valued at $116). On January 9, 2018, the Bankruptcy Court granted a Chapter 7 discharge to Mr. Severance.

[*7] a mental or physical health problem either when those returns were filed or the form was filed.  Petitioner did check the boxes on this form indicating that (1) when those returns were filed she had some college education; (2) although she was not involved in preparing those returns (Mr. Severance dealt directly with the CPA who prepared those returns), she gave tax documents to the CPA so that those returns could be prepared, agreed to file those returns (which she signed), and did not know anything was incorrect on or missing from those returns; (3) she was having financial problems when those returns were filed (since she was a homemaker, having been out of work from 2009 to August 2017); and (4) she made the decisions about how money was spent during the years at issue.

On the Form 8857 petitioner also indicated her then-current financial situation for seven individuals in her household (i.e., three adults, including herself, and four children); to wit, monthly income totaling $7,875, consisting of wages of $7,075 and Mr. Severance's "VA Disability" payments of $800; and monthly expenses totaling $6,219, consisting of food and personal care totaling $1,858, transportation of $700, housing and utilities totaling $780, medical expenses of $536, and "other" expenses totaling $2,345.  At the end of the form, she checked the box indicating that she would like a refund if she qualified for relief, and she provided the following brief statement for the IRS to consider in determining whether it would be unfair to hold her liable for the liabilities for the years at issue:

> My spouse and I are both Military Veterans.  After tow [sic] tours to Iraq my spouse went to work as a private security contractor in Iraq.  After being back from his tours and unable to find a [sic] decent work, he decided to go back to [sic] overseas as a contractor in order to help us get back on our feet.  I worked full time.  Once overseas and as our financial situation improved[,] we moved from the inner city to where he grew up an hour away.  I eventually left my job to dedicate time to our little one at the time and to try and go back to school.  We hired an accountant in order to do his taxes since different laws applied to him at the time as a contractor overseas and we were not savvy in filing out [sic] our own taxes.  My husband worked overseas for about 5 years and then had to come home due to injuries suffered.  During that time we grew in size from two children to now five.  We have had to struggle financially for many years since him [sic] losing his job.  I had to find

[*8]   a job[.]  I cannot afford or our family can not [sic] afford to pay this large debt.  I am asking to be granted innocent spouse relief.

On August 26, 2019, the IRS issued two letters to petitioner (in care of her attorney Timothy J. Burke, the same attorney of record for petitioner in this case).  The first letter related to 2010 (Letter 1) and the second letter related to 2011 (Letter 2).  In Letter 1 the IRS informed petitioner that she was ineligible for relief from joint and several liability because "no amount is currently owed and you didn't make any refundable payments" for 2010 and "you did not provide documentation that any payments were made solely by you."  Letter 2 was a preliminary determination, proposing to deny relief from joint and several liability under section 6015(b) and (f) for 2011.[6]

In response to these letters, Mr. Burke mailed and faxed to the IRS a letter dated September 3, 2019.  In this letter Mr. Burke insisted that the IRS correct "[t]he record" to include certain enclosed information that he contended was in the IRS's possession at all relevant times.  He also requested that given the enclosed information, the IRS review its statement that petitioner had not provided documentation that any payments were made solely by her, and that this review be done within the time necessary to allow for an appeal for the 2010 taxable year concomitantly with the 2011 taxable year.

On November 21, 2019, the IRS issued a final notice of determination to petitioner, denying her relief from joint and several liability under section 6015(b) for 2011.  The record is silent as to whether the IRS ever issued a final notice of determination to petitioner, denying her relief from joint and several liability under section 6015(f) for 2011.

---

[6] Letter 2 also indicated that petitioner did not meet the marital status requirement for consideration under section 6015(c), i.e., the requirement that at the time of the request for relief, the spouse who requests that relief (requesting spouse) was separated or divorced from the nonrequesting spouse or had not been a member of the same household as the nonrequesting spouse at any time during the 12-month period ending on the date of the request for relief.

**[\*9]**                                    OPINION

I.     *Introduction*

Generally, married taxpayers may elect to file a joint federal income tax return. § 6013(a). If a joint return is made, the tax is computed on the spouses' aggregate income, and each spouse is fully responsible for the accuracy of the return and is jointly and severally liable for the entire amount of tax shown on the return or found to be owing. § 6013(d)(3); *Butler v. Commissioner*, 114 T.C. 276, 282 (2000). Nevertheless, under certain circumstances a spouse who has made a joint return may seek relief from joint and several liability under procedures set forth in section 6015. Section 6015 provides a spouse with three alternatives: (1) full or partial relief under subsection (b); (2) proportionate relief under subsection (c); and (3) if relief is not available under subsection (b) or (c), equitable relief under subsection (f).

This Court has jurisdiction to determine the appropriate relief available to a requesting spouse under section 6015(b), (c), or (f). *See* § 6015(e)(1)(A). We apply a de novo standard of review to any determination made by the IRS under section 6015. § 6015(e)(7); *see Porter v. Commissioner*, 132 T.C. 203, 210 (2009), *superseded in part by statute*, Taxpayer First Act, Pub. L. No. 116-25, § 1203(a)(1), 133 Stat. 981, 988 (2019). However, our scope of review is limited. In 2019 Congress amended the statutory provision that governs our determination, i.e., section 6015(e), by adding a new paragraph (7). *See* Taxpayer First Act § 1203(a)(1), 133 Stat. at 988. This paragraph applies to section 6015 petitions filed on or after July 1, 2019, the date of enactment. *See Sutherland v. Commissioner*, 155 T.C. 95, 96–97, 105 (2020). Section 6015(e)(7) applies here because petitioner petitioned this Court on February 24, 2020. Thus, we decide this case based on (1) the administrative record, which has been stipulated into evidence (and consists of Exhibits 1–J to 3–J, Exhibits 7–J to 13–J, and Exhibits 15–J to 41–J); (2) any additional newly discovered or previously unavailable evidence, which also has been stipulated into evidence (and consists of Exhibits 4–J to 6–J, Exhibit 14–J, and Exhibits 42–J to 48–J); and (3) the testimony taken at trial, which was not part of the administrative record. *See Sleeth v. Commissioner*, T.C. Memo. 2019-138, at \*3, *aff'd*, 991 F.3d 1201 (11th Cir. 2021).

The taxpayer requesting relief under section 6015 generally bears the burden of proving that he or she is entitled to relief. *See* Rule 142(a);

**[\*10]** *Porter*, 132 T.C. at 210; *Alt v. Commissioner*, 119 T.C. 306, 311 (2002), *aff'd*, 101 F. App'x 34 (6th Cir. 2004); *Jonson v. Commissioner*, 118 T.C. 106, 113 (2002), *aff'd*, 353 F.3d 1181 (10th Cir. 2003).

Petitioner has requested relief from joint and several liability under section 6015(b) and (f) and only with respect to the portions of the understatements for the years at issue that are attributable to the section 911 foreign earned income exclusions that the Severances reported on their joint returns for those years.[7]  Below we address each claim in turn.

II.    *Relief Under Section 6015(b)*

In order to be entitled to relief under section 6015(b), the requesting spouse must satisfy the following conditions: (1) a joint return has been made for a taxable year; (2) on such return there is an understatement of tax attributable to erroneous items of the nonrequesting spouse; (3) the requesting spouse did not know and had no reason to know of the understatement at the time the return was signed; (4) taking into account all facts and circumstances, it is inequitable to hold the requesting spouse liable for that year's deficiency in tax attributable to such understatement; and (5) the requesting spouse elects relief not later than the date which is two years after the date the IRS has begun collection activities with respect to requesting spouse.  § 6015(b)(1).  These conditions are stated in the conjunctive, and thus a failure to meet any one of them precludes the requesting spouse from being entitled to relief under section 6015(b).  *Alt*, 119 T.C. at 313; *McClelland v. Commissioner*, T.C. Memo. 2005-121, slip op. at 9.

Respondent takes the position that petitioner does not meet the fifth condition, i.e., petitioner did not timely elect relief under section 6015(b) because her Form 8857 was submitted to the IRS on March 18, 2019, which was over two years after both of the following 2015 collection activities with respect to petitioner: (1) on April 15, 2015, the IRS offset the Severances' 2014 $1,000 overpayment against their 2010 liability and (2) on December 4, 2015, the IRS filed a proof of claim in Mr. Severance's Chapter 13 bankruptcy action.

---

[7] On the basis of her Form 8857, it appears that petitioner requested relief under section 6015(b), (c), and (f).  However, before this Court, she does not pursue (and thus has abandoned) an argument that she is entitled to relief under section 6015(c), perhaps recognizing that because she is still married to and residing with Mr. Severance she does not meet the marital status requirement under section 6015(c).

**[*11]** Treasury Regulation § 1.6015-5(b)(2)(i) defines "collection activity" for purposes of section 6015(b)(1)(E) to include, as relevant here, (1) "an offset of an overpayment of the requesting spouse against a liability under section 6402" and (2) "the filing of a claim by the United States in a court proceeding in which the requesting spouse is a party or which involves property of the requesting spouse."[8] Additionally, the same Treasury regulation goes on to define the term "property of the requesting spouse" as "property in which the requesting spouse has an ownership interest (other than solely through the operation of community property laws), including property owned jointly with the nonrequesting spouse." *Id.*

Petitioner contends that the IRS's filing of a proof of claim in Mr. Severance's Chapter 13 bankruptcy action was not a collection activity within the meaning of section 6015(b)(1)(E) and the accompanying Treasury regulations because only Mr. Severance filed a voluntary petition for relief under Chapter 13 with the Bankruptcy Court. Petitioner also seemingly disputes as to 2010 that the IRS's offset of her 2014 overpayment was a collection activity within the meaning of section 6015(b)(1)(E) and the accompanying Treasury regulations; in this regard, she contends that the IRS's offset did not bar her request for relief under section 6015(b) because the 2019 payment made to the IRS, along with her 2019 letter to the IRS, was an informal claim for refund. Petitioner's contentions are without merit.

The plain text of Treasury Regulation § 1.6015-5(b)(2)(i) says that (1) an offset of the requesting spouse's overpayment and (2) the filing of a claim by the United States in a court proceeding involving the requesting spouse's property (regardless of whether the requesting spouse is a party to the proceeding) are collection activities. *See Textron Inc. & Subs. v. Commissioner*, 336 F.3d 26, 31 (1st Cir. 2003) ("The Supreme Court has repeatedly emphasized the importance of the plain meaning rule, stating that if the language of a statute or regulation has a plain and ordinary meaning, courts need look no further and should apply the regulation as it is written." (first citing *Commissioner v. Soliman*, 506 U.S. 168, 174 (1993); then citing *United States v. Ron Pair Enters., Inc.*, 489 U.S. 235, 241–42 (1989); and then citing *Gitlitz v. Commissioner*, 531 U.S. 206, 220 (2001))), *rev'g on other grounds* 115

---

[8] Treasury Regulation § 1.6015-5(b)(2)(i) also defines "collection activity" as a section 6330 notice and the filing of a suit by the United States against the requesting spouse for the collection of the joint tax liability, but it does not include a notice of deficiency, the filing of a notice of federal tax lien, or a demand for payment of tax.

[*12] T.C. 104 (2000). Because the Severances had an overpayment of $1,000 with respect to 2014, they were entitled to claim a refund for that year. *See* § 6511(a) and (b)(1); *Commissioner v. Lundy*, 516 U.S. 235, 240 (1996). However, pursuant to section 6402(a), on April 15, 2015, the IRS applied that overpayment to reduce their 2010 tax liability. Then on December 4, 2015, the IRS filed a proof of claim in Mr. Severance's Chapter 13 bankruptcy action; that action included, as reflected by a form Mr. Severance filed in connection with the action, petitioner's property, i.e., property that petitioner jointly owned with him, the Carver home and the Mutual Bank checking account.[9] Thus, pursuant to section 6015(b)(1)(E), the IRS began collection activities against petitioner in 2015; and because petitioner's Form 8857 was submitted to the IRS on March 18, 2019, which was more than two years after those collection activities, petitioner is not entitled to relief from joint and several liability under section 6015(b) on timeliness grounds.[10] *See Campbell v. Commissioner*, 121 T.C. 290 (2003); *United States v. Haag*, 94 A.F.T.R.2d (RIA) 2004-6665 (D. Mass. 2004); *Ogden v. Commissioner*, T.C. Memo. 2019-88; *Tu Pham v. Commissioner*, T.C. Memo. 2012-171; *Hall v. Commissioner*, T.C. Memo. 2004-170.

III.    *Relief Under Section 6015(f)*

Section 6015(f) allows for relief from joint and several liability in cases where no relief is available under subsection (b) (or (c)) if, taking

---

[9] We note that Mr. Severance's 2017 Chapter 7 bankruptcy action involved the same property. Indeed, the parties stipulated that (1) "[p]etitioner owned property subject to Mr. Severance's [2015] bankruptcy estate" and (2) as to the Carver home, "[p]etitioner and Mr. Severance . . . own" it. We treat a stipulation "as a conclusive admission by the parties, and the Court will not permit a party to change or contradict a stipulation, except in extraordinary circumstances." *Shackelford v. Commissioner*, T.C. Memo. 1995-484, slip op. at 15; *see also* Rule 91(e). Petitioner has not "asked to be relieved [from the binding effect] of this stipulation, and we will therefore hold [her] to it." *See Winter v. Commissioner*, T.C. Memo. 2010-287, slip op. at 28.

[10] Respondent also contends, albeit in the context of whether petitioner is entitled to relief under section 6015(f), that petitioner had reason to know of the understatements for the years at issue when she signed the joint returns for those years and it would not be inequitable to hold her liable for the deficiencies attributable to those understatements. Thus, even if we were to conclude that petitioner's request for relief under section 6015(b) was timely, we would still deny section 6015(b) relief to petitioner for failure to meet the third and fourth conditions of section 6015(b)(1) because we agree with respondent, as later discussed in the context of addressing whether petitioner is entitled to relief under section 6015(f), that petitioner had reason to know of the understatements for the years at issue when she signed the joint returns for the years at issue and it would not be inequitable to hold her liable for the deficiencies attributable to those understatements.

**[\*13]** into account all the facts and circumstances, it would be inequitable to hold the requesting spouse jointly and severally liable. Having found that petitioner is not eligible for relief under section 6015(b) (and section 6015(c) does not apply given her marital status), we turn our inquiry to whether it would be inequitable to hold her liable for the liabilities for the years at issue.

The IRS evaluates whether equitable relief is appropriate using the framework set forth in Rev. Proc. 2013-34, 2013-43 I.R.B. 397, *modifying and superseding* Rev. Proc. 2003-61, 2003-2 C.B. 296. Although we are not bound by the eligibility guidelines set forth in Rev. Proc. 2013-34, since they are applicable in this case we will analyze petitioner's request under these guidelines to ascertain whether she satisfies the requirements for relief under section 6015(f). *See Jones v. Commissioner*, T.C. Memo. 2019-139, at \*13–14, *aff'd*, No. 20-70013, 2022 WL 327473 (9th Cir. Feb. 3, 2022); *see also Pullins v. Commissioner*, 136 T.C. 432, 439 (2011).

Rev. Proc. 2013-34, § 4.01, 2013-43 I.R.B. at 399, sets forth seven so-called threshold conditions that must be satisfied in order for the requesting spouse to be eligible for equitable relief under section 6015(f). Respondent takes no issue that petitioner satisfies those threshold conditions.

Where, as here, the threshold conditions are satisfied, Rev. Proc. 2013-34, § 4.02, 2013-43 I.R.B. at 400, sets forth circumstances under which the IRS will make a streamlined determination granting equitable relief to the requesting spouse under section 6015(f) if the requesting spouse can establish that he or she (1) is no longer married to the nonrequesting spouse; (2) would suffer economic hardship if relief were not granted; and (3) did not know or have reason to know about the item or items giving rise to the understatement or deficiency on the joint federal income tax return. Because petitioner remains married to Mr. Severance, she is not eligible for a streamlined determination.[11]

---

[11] In the light of our holding with respect to petitioner's marital status, we need not address whether she satisfies the economic hardship and knowledge elements. *See* Rev. Proc. 2013-34, § 4.02. However, in considering below the factors set forth in Rev. Proc. 2013-34, § 4.03, 2013-43 I.R.B. at 400–03, we address whether petitioner would suffer economic hardship if equitable relief under § 6015(f) were not granted and whether she had knowledge or reason to know of the items giving rise to the understatements or deficiencies.

**[\*14]** Where, as here, the threshold conditions are satisfied but the requesting spouse is not eligible for a streamlined determination, Rev. Proc. 2013-34, § 4.03(2), sets forth seven nonexclusive factors to be considered in determining whether a requesting spouse is entitled to equitable relief under section 6015(f): (1) marital status; (2) economic hardship; (3) in the case of an understatement, knowledge or reason to know of the item or items giving rise to the understatement or deficiency; (4) legal obligation; (5) significant benefit; (6) compliance with income tax laws; and (7) mental or physical health of the requesting spouse. All of these factors are to be weighted appropriately, and no one factor is determinative. *Pullins*, 136 T.C. at 448; *Jones*, T.C. Memo. 2019-139, at \*17 (citing *Yancey v. Commissioner*, T.C. Memo. 2017-59, at \*19). Accordingly, we will consider each in turn.

With respect to the marital status factor, this factor weighs in favor of relief if the requesting spouse is no longer married to the nonrequesting spouse and is neutral if the requesting spouse remains married to the nonrequesting spouse. Rev. Proc. 2013-34, § 4.03(2)(a), 2013-43 I.R.B. at 400–01. Because petitioner is still married to and residing with Mr. Severance, this factor is neutral.

With respect to the economic hardship factor, this factor weighs in favor of relief if a failure to grant relief from joint and several liability would cause the requesting spouse to be unable to pay reasonable basic living expenses based on the requesting spouse's current income, expenses (including taking into account shared expenses or expenses paid for by another individual, such as a current spouse or other family member), and assets. *Id.* § 4.03(2)(b), 2013-43 I.R.B. at 401. This factor is neutral if denying relief would not cause the requesting spouse economic hardship. *Id.* To that end, this factor is neutral if the requesting spouse has assets out of which he or she can make payments towards the tax liability and still adequately meet basic living expenses, notwithstanding that his or her net monthly income is below 250% of the federal poverty guidelines for his or her family size. *Id.* Although on her Form 8857 petitioner indicated that her monthly income for her family of seven totaled $7,875, putting her below 250% of the federal poverty guidelines for a family of that size,[12] it is apparent, on the basis

---

[12] The Department of Health and Human Services poverty guidelines for 2019, the year petitioner submitted her Form 8857, state that a household with seven persons in the contiguous 48 states has a poverty threshold of $39,010. Annual Update of the HHS Poverty Guidelines, 84 Fed. Reg. 1167, 1168 (Feb. 1, 2019). Thus, 250% of this threshold is $97,525.

**[\*15]** of the Severances' testimony at trial and other documentary evidence in the record, that she could still adequately meet living expenses, and indeed the Severances' paid off their outstanding liabilities for the years at issue in connection with the purchase of the Middleborough home, all the while maintaining the Carver home as rental property. This factor is neutral.

With respect to the knowledge factor, this factor weighs against relief if the requesting spouse knew or had reason to know of the items giving rise to the understatement when the return was filed. *Id.* § 4.03(2)(c)(i), 2013-43 I.R.B. at 401. This factor weighs in favor of relief if the requesting spouse did not know or have reason to know of the understatement. *Id.* The parties seemingly recognize on brief, and the record supports, that the situation here is not one that involves actual knowledge, but rather a reason to know, of the understatements for the years at issue, *see* Treas. Reg. § 1.6015-3(c)(2)(iii) (providing that knowledge of the source of the income is not sufficient to establish actual knowledge); thus, we focus our analysis of the knowledge factor on petitioner's constructive knowledge of the understatements.

A requesting spouse has reason to know of an understatement if a reasonably prudent taxpayer in his or her position, at the time he or she signed the return, could be expected to know that the return contained an understatement or that further investigation was warranted. *Butler*, 114 T.C. at 283 (and cases cited thereat); *see also* Treas. Reg. § 1.6015-2(c). Consequently, the reason to know test establishes a duty of inquiry on the part of the requesting spouse. *Butler*, 114 T.C. at 284 (citing *Stevens v. Commissioner*, 872 F.2d 1499, 1505 (11th Cir. 1989), *aff'g* T.C. Memo. 1988-63). Relevant to the "reason to know/duty of inquiry" analysis are the following nonexclusive facts and circumstances: (1) the requesting spouse's level of education; (2) any deceit and evasiveness of the nonrequesting spouse; (3) the requesting spouse's degree of involvement in the activity giving rise to the understatement; (4) the requesting spouse's involvement in business or household financial matters; (5) the requesting spouse's business or financial expertise; and (6) any lavish or unusual expenditures compared with past spending levels. Rev. Proc. 2013-34, § 4.03(2)(c)(iii), 2013-43 I.R.B. at 402; *see also* Treas. Reg. § 1.6015-2(c).

On the basis of the record before us, we conclude that petitioner has failed to carry her burden of establishing that she did not have reason to know of the section 911 foreign income exclusion items attributable to Mr. Severance's employment with Triple Canopy that

**[*16]** gave rise to the understatements for the years at issue. In connection with the section 911 exclusions, the Severances' joint returns for the years at issue reported that Mr. Severance was abroad for a certain number of days during those years. Despite the lack of formal business education and despite not working outside of the home from 2009 to 2017, petitioner had some college education and had enough sophistication through her prior work and military experiences to know whether Mr. Severance was in fact abroad for at least the requisite number of days to meet the exclusion for those years before she signed the joint returns for those years. *See Yancey*, T.C. Memo. 2017-59, at *16, *23 (finding that because the taxpayer was aware of the nonrequesting spouse's extensive activities giving rise to the understatement and participated in the preparation of the return, she had reason to know of the understatement). Furthermore, as petitioner indicated on her Form 8857, she managed her family's financial affairs during the years at issue and gave tax documents to the CPA for preparation of the joint returns for those years. *See Kellam v. Commissioner*, T.C. Memo. 2013-186, at *8–9 (finding that a taxpayer's high school education and some college courses weighed against relief when the taxpayer was involved in family finances). Petitioner cannot choose to play the "ostrich, hiding her head in the proverbial sand." *See Wang v. Commissioner*, T.C. Memo. 2014-206, at *24 (quoting *Doyle v. Commissioner*, 94 F. App'x 949, 952 (3d Cir. 2004), *aff'g* T.C. Memo. 2003-96). She had a duty to inquire but did not, and by signing the joint returns for the years at issue she is charged with constructive knowledge of their contents. *See id.* The knowledge factor weighs against relief.[13]

With respect to the legal obligation factor, this factor weighs in favor of relief if the nonrequesting spouse, through a divorce decree or other legally binding agreement, has the sole legal obligation to pay the outstanding liability. Rev. Proc. 2013-34, § 4.03(2)(d), 2013-43 I.R.B. at 402. This factor will weigh against relief if the requesting spouse has the sole legal obligation to pay, and it is neutral if, as relevant here, the spouses are not separated or divorced. *Id.* Because petitioner remains married to Mr. Severance, this factor is neutral.

With respect to the significant benefit factor, this factor weighs against relief if the requesting spouse significantly benefited from the understatement (or underpayment) of tax. *Id.* § 4.03(2)(e), 2013-43

---

[13] Assuming arguendo that we had concluded that the knowledge factor favored relief, that conclusion would not change our ultimate conclusion set forth below as to whether petitioner is entitled to equitable relief under section 6015(f).

**[\*17]** I.R.B. at 402. A significant benefit is any benefit in excess of normal support; thus, if the requesting spouse enjoyed the benefits of a lavish lifestyle, such as owning luxury items and taking expensive vacations, this factor generally weighs against relief. *Id.* If the requesting spouse did not receive a significant benefit from the understatement, this factor weighs in favor of relief. *Soler v. Commissioner*, T.C. Memo. 2022-78, at \*12. On brief, respondent acknowledges, and the record supports, that neither petitioner nor Mr. Severance lived a lavish lifestyle because of their understatements of tax for the years at issue. This factor weighs in favor of relief.[14]

With respect to the compliance factor, if the requesting spouse remains married to the nonrequesting spouse and continues to file joint federal income tax returns with the nonrequesting spouse after filing for relief, this factor is neutral if the subsequent joint returns comply with the income tax laws, and it will weigh against relief if the subsequent joint returns do not comply. Rev. Proc. 2013-34, § 4.03(2)(f)(ii), 2013-43 I.R.B. at 402–03. Although the Severances failed to timely file joint federal income tax returns for certain years, to wit, the 2014–16 taxable years, these returns were filed before petitioner's Form 8857 was received by the IRS on March 18, 2019, and the record seems to be silent as to the Severances' level of compliance with the income tax laws after the IRS's receipt of petitioner's Form 8857.[15] We will treat this factor as neutral.

With respect to the health factor, this factor weighs in favor of relief if the requesting spouse was in poor mental or physical health at the time the returns to which the request for relief relates were filed, or at the time the requesting spouse requested relief; if the requesting spouse was not in poor mental or physical health, this factor is neutral. *Id.* § 4.03(2)(g), 2013-43 I.R.B. at 403. Petitioner stipulated that she was not in poor mental or physical health when the joint returns for the years at issue were filed, nor did she indicate on her Form 8857 that she

---

[14] We note that respondent nevertheless argues on brief that this factor is "likely neutral" because the Severances "were able to avoid paying their liabilities for nearly 10 years while accruing considerable income and assets." On the basis of the record before us, we find respondent's argument to be overstated and unavailing.

[15] We note that in the record there is an IRS account transcript for the Severances for 2019 that appears to show the Severances' having timely filed their 2019 joint federal income tax return (but the IRS did not process it until August 3, 2020).

**[\*18]** was in poor mental or physical health when she requested relief from joint and several liability.  This factor is neutral.

After weighing the above factors and upon the basis of our examination of the entire record before us, we conclude that petitioner has failed to carry her burden of establishing that it would be inequitable to hold her liable for the liabilities for the years at issue and thus that she is entitled to relief under section 6015(f) with respect to those years.

We have considered all of the arguments made by the parties and, to the extent they are not addressed herein, we find them to be moot, irrelevant, or without merit.

To reflect the foregoing,

*Decision will be entered for respondent.*